Citation Nr: 1829726 
Decision Date: 07/19/18 Archive Date: 07/24/18

DOCKET NO. 10-13 674A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial evaluation in excess of 30 percent for an anxiety disorder from December 14, 2007 through January 27, 2015, and in excess of 50 percent thereafter.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran, his spouse, and his stepdaughter


ATTORNEY FOR THE BOARD

J. Fussell, Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Army from June 1963 to June 1968, and from November 1969 to July 1985, to include service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. The RO, in pertinent part, awarded service connection for an anxiety disorder and assigned an initial 10 percent evaluation for that disability, effective December 14, 2007; the date of receipt of his claim for service connection.

In a July 2009 rating decision, the RO increased the Veteran's evaluation for anxiety disorder to 30 percent disabling, effective December 14, 2007. In February 2015, the RO further increased the rating to 50 percent, effective January 28, 2015 (the date of a VA psychiatric examination). In addition, the Board has taken jurisdiction over the matter of the Veteran's entitlement to a TDIU in order to comport with the holding of Rice v. Shinseki, 22 Vet. App. 447 (2009).

The Veteran testified at a Board hearing before the undersigned Veterans Law Judge (VLJ) in November 2012; a transcript of that hearing is of record. 

This case was remanded in August 2014 and February 2017 for additional development. The case has been returned to the Board at this time for further appellate review.

In October 2017, the Veteran submitted a notice of disagreement (NOD) with respect to a May 2017 rating decision that denied service connection for obstructive sleep apnea. Thus far, the Veteran has not been furnished a statement of the case (SOC) addressing that matter. See, e.g., 38 C.F.R. § 19.29. However, it appears clear that the agency of original jurisdiction (AOJ) is aware of the NOD and is continuing to work on the appeal. Therefore, it will not be remanded at this time. Cf. Manlincon v. West, 12 Vet. App. 238 (1999).

A January 2018 rating decision granted service connection and an initial 10 percent rating for tinnitus, effective December 8, 2017; granted service connection and an initial 10 percent rating for peripheral neuropathy of the right upper extremity, effective December 8, 2017; increased the rating for peripheral neuropathy of the left upper extremity from zero to 20 percent, effective December 8, 2017; and continued the prior 10 percent disability ratings for peripheral neuropathy of each lower extremity.

In February 2018, the Veteran's representative waived initial RO consideration of additional evidence that had been received.


FINDINGS OF FACT

1. From December 14, 2007 through January 27, 2015, the Veteran's service-connected psychiatric disorder was manifested by no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.

2. Since January 27, 2015, the Veteran's service-connected psychiatric disorder has been manifested by no more than occupational and social impairment with reduced reliability and productivity. 

3. The Veteran has three years of college education and work experience as a teacher, rancher, and contractor. 

4. The Veteran's service-connected disabilities do not preclude him from securing or following a substantially gainful occupation. 


CONCLUSIONS OF LAW

1. From December 14, 2007 through January 27, 2015, the criteria for an evaluation in excess of 30 percent for anxiety disorder were not met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.21, 4.129, 4.130 (2017). 

2. Since January 27, 2015, the criteria for an evaluation in excess of 50 percent for an anxiety disorder have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.21, 4.129, 4.130 (2017).

3. The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the matters herein decided. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.103, 3.156(a), 3.159, 3.326; Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam); D'Aries v. Peake, 22 Vet. App. 97 (2008); Dingess v. Nicholson, 19 Vet. App. 473 (2006); Stegall v. West, 11 Vet. App. 268, 271 (1998). The Veteran's service records are on file, as are VA outpatient treatment (VAOPT) and Social Security Administration (SSA) records. Moreover, the Veteran has been afforded multiple VA examinations as to the evaluation of his service-connected psychiatric disorder.

The Veteran's representative has challenged the adequacy of a recent VA examination conducted in March 2017. See Sickels v. Shinseki, 643 F.3d 1362, 1366 (Fed. Cir. 2011); Bastien v. Shinseki, 599 F.3d 1301, 1307 (Fed.Cir. 2010). Specifically, it is asserted that the examiner appears to have provided conflicting information with respect to suicidal ideation and failed to render any sort of opinion regarding the Veteran's employability status.
 
In this regard, the Board notes that while the March 2017 examination report reflects that the Veteran was reportedly hospitalized for an attempted "suicide by cop" in the past, but had no current suicidal ideation, the evidence is clear, as discussed below, that the incident referred to in the notes as "suicide by cop" was not a suicide attempt. In any event, the incident occurred in June 2005, more than two years prior to the rating period currently under consideration. Moreover, as to the overall severity of the Veteran's disorder and its impact on employment, the examiner observed, in effect, that the Veteran's responses at the time of the examination were indicative of malingering and made it impossible to determine an accurate diagnosis and what, if any, functional impairment was present. As such, it appears that any "inadequacy" in the examination was due to lack of cooperation on the Veteran's part. No further notice or evidentiary development is required.

Background

An August 2000 VAOPT record shows that the Veteran worked on a ranch. It was noted that he had retired after 22 years in the military. He was able to perform his own activities of daily living. 

Of record are transcripts of depositions and a forensic psychological evaluation relative to criminal charges against the Veteran for, in part, aggravated assault of a law enforcement officer with a firearm which occurred in June 2005 when he was depressed, intoxicated, and voiced suicidal ideation. Some of these documents reflect that he raised German Shepherds and quarter horses. Also of record are various lay statements attesting to the Veteran's emotional and psychiatric status at the time of his offense. 

A May 2006 report from a clinical psychologist, prepared in conjunction with criminal charges against the Veteran reflects, in part, that the Veteran had obtained a Graduate Equivalency Diploma and he reported having three years of college education, but no degree. He had taught electronics at Marshall University for six months after leaving the Army. He had a contractor's license and had supervised up to 18 employees between 1985 and 1998. After service he had worked as an independent contractor, and had worked for a juvenile facility. He had four rental apartments and operated a farm raising German Shepherds and quarter horses. 

On VA psychiatric examination in July 2008, to determine if the Veteran had posttraumatic stress disorder (PTSD), his claim file was reviewed. It was noted that while he had not had psychotherapy, he was taking medication for anxiety and depression, which he reported had limited success. He reported having a depressed mood and apathy with low energy and interest, as well as occasional anxiety. His symptoms were described as being mild, occurring several times weekly for the past year. His past employment had been in a stone company and working in a garden. He had gone to college for over 2 years during military service. He had been found not guilty of criminal charges and released from jail in August 2007. He had remarried since the 2004 death of his wife. He denied having any friendships. He used to enjoy raising and training German Shepherds and horses. He still enjoyed fishing with his wife, and going scallop hunting. 

On mental status examination, the Veteran was clean and casually dressed. His psychomotor activity was unremarkable. He was cooperative and his affect was appropriate. He was able to perform serial 7's but not spell a word forward and backward. He was fully oriented but his thought processes displayed tangentially and circumstantiality. His thought content was unremarkable. His judgment was intact. He did not have hallucinations and did not display inappropriate behavior. He interpreted proverbs appropriately. He had no obsessive or ritualistic behavior. He did not have panic attacks, or homicidal or suicidal thoughts. His impulse control was good, although in the past there had been an episode of violence (in June 2005, which had led to criminal charges against him). He was able to maintain minimum personal hygiene. His immediate memory was normal but both his recent and remote memory were mildly impaired. He had some symptoms of PTSD, but the examiner stated that the Veteran did not have PTSD. Neuropsychological testing in July 2008 was consistent with mild cognitive impairment due to emotional factors, from untreated psychiatric disability. A neurodegenerative dementia was not currently suspected. He was capable of managing his financial affairs. His usual occupation was construction, but he was currently unemployed and had been for 10 years, having chosen to work on his ranch breeding horses and training and selling dogs prior to his incarceration. His unemployment was not due to the effects of a mental disorder. The diagnosis was an adjustment disorder with mixed anxiety and depressed mood. His Global Assessment of Functioning (GAF) score was 65. His complaints of anxiety and a depressed mood were multifactorial in etiology. His reported anxiety and depressed mood were more likely due to multiple intercurrent stressors.

On VA psychiatric examination in January 2009, the Veteran's claim file was reviewed. He was taking medication for depression, a side effect of which was erectile dysfunction. He reported being depressed for 4 days out of the week, the duration of which was most of the day. He denied having anhedonia and there were no signs or symptoms of mania. He reported having 2 to 3 close friends. He described his current marriage as being "great," but did not have any contact with his two adult children. His activities and leisure pursuits were fishing and hunting scallops. 

On mental status examination, the Veteran was clean and casually dressed. His speech was clear, spontaneous, and coherent. He was attentive. His affect was normal. He was able to spell the word "world" forward and backward. He was intact as to place and person, but not time, missing the correct date by two days. His thought processes and content were unremarkable. He had no delusions. His judgment was intact and his insight was partially intact. He had no obsessive or ritualistic behavior. He did not have panic attacks, or homicidal or suicidal thoughts. His impulse control was fair. He was able to maintain minimum personal hygiene and he had not had problems with activities of daily living. His remote and immediate memory were normal, but his recent memory was mildly impaired. He had difficulty concentrating. He had clinically significant distress or impairment in social, occupational, or other important areas of functioning. While he endorsed some symptoms of PTSD, the examiner determined that he did not meet the criteria for a diagnosis of PTSD. He was capable of managing his financial affairs. His GAF score was 65. 

The examiner stated that the Veteran had occasional decrease in work efficiency and there were intermittent periods of inability to perform occupational tasks, but there was generally satisfactory function in routine behavior, self-care, and normal conversation. It was noted that the Veteran reportedly had no current friendships, although he had made a couple of references to having relationships with people. He met the criteria for an anxiety disorder. 

At the November 2012 travel Board hearing, additional evidence was submitted, together with a waiver of initial AOJ consideration of such evidence. The Veteran testified that he had no friends. He did not have any relationships with anyone outside of his immediate family, but stayed at home every day, at which times he would work a little bit around his farm. He did not know his neighbor's last name. He had had an episode of violence in 2005 and after an encounter with the police he was incarcerated for 2 years, from June 2005 to August 2007, most of which was in a psychiatric ward. Currently, he would lock himself away for four or five days at a time. He slept very little at night and had nightmares of Vietnam events, often getting up to check the windows. He also had memory loss. 

The Veteran further testified that he had lost much of his farm after going to jail, and now had only three and a third acres. He had obsessive or ritualistic behavior, such as waking up at night and checking the doors. He was not employed, having last worked in 2003 as an instructor, a teacher at a state prison, teaching people how to lay blocks, but he had been fired because he could not get along with the bosses. He took medication for anxiety and saw a doctor once every 2 months. This treatment only maintained him at his current level. For relaxation, he would go fishing on occasion, but had not been in the last 2 months. The Veteran testified that he did not engage in social activities. After his adverse encounter with law enforcement, he now simply stayed on his property. 

The Veteran's wife testified that it did not take much to trigger the Veteran, at which times he would stay in bed for three, four, or five days. She had lost a lot of friends because of the Veteran's behavior. He had not been violent towards her but he would, at times, totally withdraw. His memory was so bad that she did not want him working with tools anymore, because he would leave them running and walk away. Also, he would forget to pay bills, to such an extent that she now took care of ensuring that all bills were paid. 

A December 2014 VAOPT record shows that the Veteran and his wife had recently taken a trip to Canada. He had received a benefit from taking medication for anxiety and depression. On mental status examination, his mood was good and his affect was euthymic. There was no suicidal or homicidal ideation. He was fully oriented, and his memory and concentration were good. His GAF score was 45. 

On VA psychiatric examination on January 28, 2015, pursuant to the 2014 Board remand, the Veteran's electronic records were reviewed. The examiner stated that the best summary of the Veteran's level of occupational and social impairment with regards to all mental diagnoses was occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran reported that he had gotten his GED and had 2 years of college education, from 1982 to 1983, at Georgia Tech. He was living with his current wife, and their marriage had lasted for 9 years. He was not close to his 2 children from his first marriage. He reported having no friends. He and his wife went "all over Florida. The last dog show that [he] went [to] was last year." He denied any self-harm or harm to others, i.e., ideas or plans. He had not had a job since he got out of jail in August 2007. Previously, he had owned a construction business until 1999. He had worked at a Florida State Prison for 18 months, in 2003 and 2004, but had stopped working there in 2004. The last psychiatric hospitalization had been during his incarceration. 

The Veteran reported taking medication for depression and anxiety, and receiving individual, but not group, psychotherapy. He reported not having any problems from alcohol use and denied any other substance use. However, the examiner observed that there was an inconsistency because the Veteran's electronic treatment records noted cannabis abuse, and he had tested positive for cannabis in November 2013.

On mental status examination, the Veteran had anxiety, suspiciousness, chronic sleep impairment, and disturbances of motivation and mood. The examiner reported that the Veteran had mild sleep disturbance, sleeping from about 9:30 or 10:00 until 6:00 a.m. The Veteran reported having memory loss, because he could not remember the names of those he had served with in the Army. He had mild to moderate irritability. He reported having decreased motivation in pleasurable activities. He was capable of managing his financial affairs. 

The examiner reported that the Veteran was not unemployable due to his service-connected anxiety disorder. There was no objective evidence that the service-connected psychiatric disorder precluded him from obtaining and maintaining gainful employment. 

A January 26, 2017 VAOPT record shows that the Veteran had an idea of ending his life, but had no plan, and firmly denied any intention to do so. No suicide safety actions were currently required. He continued to use cannabis daily, because it calmed him down. He was depressed, and preoccupied with obtaining employability compensation. He denied side effects from medications. He had fragmented sleep of 5 to 6 hours each night. He denied the presence of neurovegetative symptoms of depression and active psychosis, e.g., auditory and/or visual hallucinations and delusions. He denied current suicidal or homicidal ideation, intention or plan. He was working to rebuild his home because it had been flooded. On mental status examination, the Veteran's speech was clear and coherent. He described his mood as being depressed and frustrated. His affect was tense and irritable. His thought processes were logical, thematic, and focused on the VA compensation and pension process. He admitted having current suicidal ideation but denied having any plans. He had no homicidal ideation, active auditory or visual hallucinations or delusions. The diagnoses included cannabis use. 

On VA psychiatric examination in March 2017, pursuant to the 2017 Board remand, the Veteran's electronic records were reviewed. He and his wife had lost their home when it flooded during a hurricane in 2016. His son and grandsons live nearby but they did not have anything to do with the Veteran because, in the Veteran's own words, "I'm a jerk." He denied having friends with whom he spent time, and did not go anywhere. It was noted that a recent, September 2015, VAOPT record indicated that he had had a recent trip to Chicago in his motor home and felt that the trip had gone well. That same treatment record noted that he had been able to continue taking the current medication regimen with benefit for his chronic depressive and anxiety symptoms and without any difficulties. There were no manic or psychotic symptoms noted. Also at that time, the Veteran reported that he was last employed teaching masonry at a prison in 2004 but had been fired. He denied being employed since then. Currently, the Veteran reported smoking cannabis 3 to 4 times a month, when he got stressed. 

On mental status examination, the Veteran was casually dressed and had good hygiene. He was fully oriented, and cooperative throughout the exam. His affect appeared anxious and dysphoric and congruent with reported mood. His thought processes appeared organized and speech was coherent. There was no evidence of psychosis. He denied suicidal or homicidal ideation, intent, or plan. He was capable of managing his financial affairs.

The Veteran reported experiencing anger and also a depressed mood and anxiety daily. He reported continued sleep impairment, and used a CPAP machine for sleep apnea. He described having difficulty concentrating, which impaired his comprehension when reading. 

The examiner specifically noted that the Veteran could not identify any activities in which he engaged and indicated that he did not leave his rental home. However, this was in contrast to recent records indicating that he was rebuilding his home that was flooded in a recent hurricane. The Veteran's response style was evaluated with a structured inventory of malingered symptomatology. His total score was significantly elevated above the recommended cutoff score for the identification of suspected malingering, as identified by recent research. The Veteran endorsed a high frequency of symptoms that were highly atypical in patients with genuine psychiatric or cognitive disorders, raising the suspicion of malingering. In addition to the elevated total score, the Veteran had elevated scales measuring psychosis, neurologic impairment, amnestic disorders, and affective disorders. 

The examiner observed that when there was significant exaggeration or feigning of symptoms, it was impossible to determine what symptoms a person was truly experiencing and what symptoms they were feigning or exaggerating without mere speculation. These results indicate that it was currently impossible to determine an accurate diagnosis or what, if any, functional impairment (social or occupational) the Veteran had there was as a result of his symptoms. Thus, a level of impairment in social or occupational functioning or a GAF score could not be determined. 

In VA Form 21-8940, Application for Increased Compensation Based on Unemployability in June 2017, the Veteran reported that his service-connected anxiety disorder prevented him from securing or following a substantially gainful occupation. He had work experience owning his own construction company from 1998 to 2000 and as a "teacher/contractor" from November 2002 to February 2003. He had left his last employment due to his disability. He had three years of college education. 

VAOPT records show that in November 2017 the Veteran reported that he did not go anywhere and spent all his time at home. However, it was also noted that been spending a lot of time working on his house, trying to sell a property; that his wife had started showing dogs again; and they had been visiting their daughter in Chicago. On examination he ambulated well and without assistance. 

Rating Principles

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4. The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. In resolving this factual issue, only the specific factors as enumerated in the applicable rating criteria may be considered. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992). 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

A higher rating may not be denied on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria. Jones v. Shinseki, 26 Vet. App. 56, 63 (2012) (noting that such improvement is "relevant to the appellant's overall disability picture"). Conversely, if [the applicable DC] does specifically contemplate the effects of medication, then Jones is inapplicable." McCarroll v. McDonald, 28 Vet. App. 267, 271 (2016) (en banc).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). 

Under 38 C.F.R. § 4.130, the General Formula for Rating Mental Disorders, a 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; or mild memory loss (such as forgetting names, directions, recent events). Id. 

A 50 percent rating is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: Suicidal ideations; obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id. 

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The symptoms listed at 38 C.F.R. § 4.130 are not an exclusive or exhaustive list of symptomatology which may be considered for a higher rating claim. Mauerhan v. Principi, 16 Vet. App. 436 (2002). While the Veteran's symptomatology is the primary consideration, the Veteran's level of impairment must be in "most areas" applicable to the relevant percentage rating criteria. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). 

The Global Assessment of Functioning (GAF) scale is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994). A GAF score of 41 to 50 reflects a serious level of impairment, e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting or serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.

Analysis

Anxiety Disorder Rated 30 percent From December 14, 2007 through January 27, 2015

Initially, it must be observed that the evidence of record shows that the Veteran habitually uses cannabis. However, there is insufficient evidence to provide a basis for separating any impairment due to such cannabis abuse from symptoms due to his service-connected psychiatric disorder. Thus, any symptoms due to cannabis abuse will be considered in arriving at the proper disability rating for the Veteran's overall impairment due to psychiatric impairment. 

At the July 2008 VA rating examination, the Veteran's symptoms were described as being mild. This is consistent with the finding of mildly impaired recent and remote memory at that time, and the neuropsychological testing which was also consistent with mild cognitive impairment, as well as his GAF score at that time of 65. While he denied having any friendships at that time, on the later examination in January 2009 he reported having 2 to 3 close friends. At that time he continued to have no more than mild impairment of his recent memory, but both his remote and immediate memory were normal. He also had only partial insight and the examiner stated that he had clinically significant impairment socially and occupationally. However, his GAF score remained 65, which is consistent with the prior examination finding, in 2008, of mild impairment. In fact, the examiner reported the conflicting history related by the Veteran of having no current friendships, while also reporting that he did have relationships with others. Similarly, at the 2012 hearing the Veteran related having no relationships with anyone outside of his family and did not engage in social activities. However, later evidence shows that, in fact, the Veteran and his wife have engaged in extensive travels. He further testified as to memory impairment, as did his wife, but in contrast prior examinations found only mild memory impairment and a subsequent VAOPT record in 2014 noted that both his memory and concentration were good. 

At the Board hearing, in response to questioning about obsessive or ritualistic behavior, the Veteran testified that he regularly patrolled his house. This is consistent with some of the PTSD symptoms which he has displayed, although he does not qualify for a full-fledged diagnosis of PTSD. However, the Board will consider all of the Veteran's psychiatric symptoms, regardless of etiology, in arriving at an appropriate disability evaluation. On the other hand, the Board will not conflate such symptoms consistent with PTSD to the level of being obsessional rituals, consistent with a 70 percent disability rating, particularly since that rating requires that such obsessional rituals interfere with routine activities, which is not shown to be the case here. Also, the Board acknowledges that the 2014 VAOPT note indicated that the Veteran's GAF score was 45, which is consistent with serious symptoms; however, other findings at that time revealed essentially no unusual or abnormal findings on a mental status examination and the evidence overall prior to July 28, 2015, including prior mental status examination findings and GAF scores, are most consistent with no more than, at most, moderate impairment and, as such, did not warrant a rating in excess of 30 percent. 

Accordingly, the Board finds that prior to January 28, 2015, the Veteran's service-connected psychiatric disability was productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, but was not productive of occupational and social impairment with reduced reliability and productivity. 

Anxiety Disorder Rated 50 percent since January 27, 2015

A January 2017 VAOPT record indicated that the Veteran had suicidal ideation. In this regard, the Board notes that suicidal ideation appears only in the 70 percent evaluation criteria and there are no analogues at the lower evaluation levels, and that evidence of more than suicidal thoughts is not required. See Bankhead v. Shulkin, 29 Vet. App. 10, 20 -21 (2017). 

However, at the time of the January 2017 VAOPT record, it was also reported that the Veteran had neither suicidal nor homicidal ideation. This latter finding is most consistent with the findings on VA psychiatric examinations on January 28, 2015 and March 2017 when he also had no suicidal or homicidal ideation or plans. Consequently, the Board finds that since January 28, 2015 the Veteran has not had suicidal ideation. 

The earliest evidence that the Veteran's service-connected psychiatric disabilities were productive of occupational and social impairment with reduced reliability and productivity is the VA examination of January 28, 2015.

As previously stated, the Board finds that the Veteran's patrolling his house is not an obsessional ritual that interferes with routine activities. Also, there has been no evidence of the Veteran's speech being intermittently illogical, obscure, or irrelevant. Further, he had not displayed near continuous panic or depression which affects his ability to function independently, appropriately and effectively. Also, while he and his wife have attested that he has impaired impulse control, he has not had any periods of violence since the incident leading to his arrest in June 2005 which was prior to his being service-connected for psychiatric disability several months after his release from incarceration. 

Likewise, the Veteran has not displayed spatial disorientation or any neglect of personal appearance and hygiene. Significantly, the Veteran has reported having sleep disturbance, but it is also clear that much of this stems from his more recently reported sleep apnea, for which he has claimed service connection. With respect to other symptoms and descriptions by the Veteran as to the level of impairment from psychiatric disability, the Board finds no reason to doubt the March 2017 VA examiner's finding of the Veteran's distortion of symptomatology by reason of which that examiner was unable to render an opinion as to the overall level of social and occupational impairment due to psychiatric disability. This is consistent with a prior findings by the January 2015 VA examiner who noted that while the Veteran reported not having any problems from alcohol use, he also denied other substance use even though VA clinical records documented abuse of cannabis. There is a similar conflict in the histories related by the Veteran as to whether he has any friends, at times reporting that he does and at times reporting that he does not, and whether he has been isolated since there is evidence that he and his wife travel extensively.

The Board acknowledges the statement of family members as to difficulties within the family due to the Veteran's psychiatric disorder. While he has continued to have impairment with respect to family relationships, the evidence is not persuasive that this is any greater than it has been in the past. 

Accordingly, the Board finds that since January 28, 2015, the Veteran's service-connected psychiatric disabilities are not shown to be of such severity as to more closely approximate the criteria for a 70 percent disability rating. 

Extraschedular Consideration

An extraschedular disability rating is warranted if the case presents such an exceptional or unusual disability picture, with such related factors as marked interference with employment or frequent periods of hospitalization, that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). This requires a three-set inquiry. Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). First, is whether the evidence presents such an exceptional disability picture that the schedular evaluations are inadequate, necessitating a comparison between the level of severity and symptoms with the rating criteria, and if the criteria reasonably describe the symptoms and level of severity, the assigned schedular rating is adequate and no referral is required. Second, if the schedular rating does not contemplate the symptoms and level of severity and is inadequate, it must be determined if there exists and exceptional disability picture which exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, if the first two inquiries are met, then the case is referred to the appropriate VA official for consideration. Id. 

If either (1) the claimant's disability picture is adequately contemplated by the rating schedule or (2) there are no other related factors," for example, frequent hospitalizations or marked interference with employment, then referral is not warranted and the other element need not be considered. The order in which these elements are addressed is irrelevant because they both have to be met before referral is warranted. See id.; Thun, 22 Vet. App. at 116; see also Anderson v. Shinseki, 22 Vet. App. 423, 427 (2009). 

The United States Court of Appeals for the Federal Circuit has held that an extraschedular rating may be assigned which considers the combined impact of multiple service-connected disorders. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). However, on December 8, 2017, VA issued a Final Rule amending 38 C.F.R. § 3.321(b)(1), effective January 8, 2018, to clarify that an extraschedular rating is not available based on the combined effect of multiple service-connected disabilities. See Final Rule, 82 Fed.Reg. 57830, 57,835 (Dec. 8, 2017); see also proposed revision 81 Fed.Reg. 23228, 23232 (Apr. 20, 2016). This revision is applicable to all applications for benefits that are received by VA on or after January 8, 2018 or that are pending before VA, the United States Court of Appeals for Veterans Claims, or the United States Court of Appeals for the Federal Circuit (Federal Circuit) on January 8, 2018.

The Veteran's service-connected psychiatric disorder involves the symptoms, and the impact thereof, which have been discussed above. The General Formula for Rating Mental Disorders contemplates these symptoms. Further, 38 C.F.R. § 4.130 presents examples of symptoms, and in considering the Veteran's claim, the Board has considered all of his symptoms, not just those listed in the rating criteria, as well as his overall level of impairment. See Mauerhan, 16 Vet. App. at 442. Hence, the rating criteria reasonably describe the Veteran's disability as they provide a suggested list of symptoms but include all psychiatric symptoms that contribute to the Veteran's level of impairment. In summary, there is no indication in the record that the average industrial impairment from the service-connected psychiatric disorder would be in excess of that contemplated by the rating provided by the General Formula for Rating Mental Disorders. The Veteran's disability picture is not shown to be exceptional or unusual. 

Specifically, a wide range of factors as well as signs and symptoms are contemplated in the applicable rating criteria including the use of medication, decrease work efficiency, ability or inability to perform occupational tasks, routine behavior or self-care as well as symptoms such as anxiety, suspiciousness, panic attacks, chronic sleep impairment, memory impairment, impaired affect; circumstantiality, impaired speech; panic attacks; difficulty in understanding complex commands; impaired judgment; impaired abstract thinking; disturbances of motivation or mood; suicidal or homicidal ideation; obsessional rituals; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; delusions or hallucinations; behavior; being a persistent danger of hurting self or others; the degree of ability to perform activities of daily living; and the degree of orientation or disorientation. Moreover, the evidence considered for rating purposes under § 4.130 is not restricted to the symptoms provided in the Rating Schedule; rather, VA must consider all relevant evidence. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. Therefore, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Consequently, the Board concludes that referral of this case for consideration of an extraschedular rating is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). 

The Board must determine whether the weight of the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event. However, if the weight of the evidence is against the appellant's claim, the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski 1 Vet. App. 49 (1990). Here, the Board concludes that the preponderance of the evidence is against the claim for higher staged ratings for the service connection psychiatric disability. 


TDIU

Without regard to advancing age or impairment due to nonservice-connected disabilities, if the schedular rating is less than total, a TDIU rating can be assigned based on individual unemployability if a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability(ies); provided that he has one service- connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). If a veteran fails to meet the percentage standards set forth in § 4.16(a) but is unemployable by reason of service-connected disabilities, the claim may be submitted for extraschedular consideration. 38 C.F.R. § 4.16(b).

In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15. Marginal employment shall not be considered substantially gainful employment. Consideration shall be given in all claims to the nature of employment and the reason for termination. 38 C.F.R. § 4.16. 

An award of TDIU does not require a showing of 100 percent unemployability. See Roberson v. Principi, 251 F.3d 1378, 1385 (2001). The central inquiry is whether a veteran's service-connected disabilities alone are of sufficient severity to render the veteran unable to secure or follow a substantially gainful occupation. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). 

Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to TDIU is based on an individual's particular circumstances." Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, a TDIU analysis must take into account the individual veteran's education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164, 168 (1991); see Friscia v. Brown, 7 Vet. App. 294, 295-97 (1994); Beaty v. Brown, 6 Vet. App. 532, 534 (1994); Moore v. Derwinski, 1 Vet. App. 356, 357 (1991). 
Background

An August 2000 VAOPT record shows that the Veteran worked on a ranch. In September 2000, it was noted that a past MRI, about 7 years ago, had revealed two herniated lumbar discs. He complained of chronic low back pain since 1983, with intermittent radiation of low back pain down the left lateral thigh to the medial aspect of the left foot. It was noted that he had retired after 22 years in the military. He was able to perform his own activities of daily living.

VA nerve conduction velocity studies in June 2004 revealed peripheral sensory neuropathy in the lower extremities and very mild median nerve compression neuropathy at the wrist, indicative of carpal tunnel syndrome (CTS). 

On VA examinations in March 2005, the Veteran complained of erectile dysfunction and numbness of the left hand and both feet. He reported being depressed and anorexic since his wife's death in 2004. On physical examination, he had numbness of the left hand and both feet. He was right handed. It was reported that his numbness did not really affect his activities of daily living. He had decreased sensation of the feet but still had protective sensation and, despite left CTS, he had no decreased sensation of the 1st, 2nd, and 3rd fingers of the left hand. The diagnoses were erectile dysfunction due to diabetic neuropathy, but corrected with medication; mild left CTS, a complication of diabetic neuropathy, not yet detectable on peripheral nerve physical examination and not yet significantly disabling, having only numbness; and mild diabetic peripheral neuropathy of the lower extremities. 

In the Veteran's VA Form 21-8940, Application for Increased Compensation Based on Unemployability, he reported that his service-connected anxiety disorder prevented him from securing or following any substantially gainful occupation. He reported that his disability had affected his full-time employment and he had last work on a full-time basis in February 2003, as a teacher/contractor from November 2002 to February 2003. He also had work experience being self-employed, owning and operating Beasley's Gutter and Siding from 1988 to 2000. He had left his last job or self-employment because of his disability. He had not tried to find employment since he had become too disabled to work. He had three years of college education. 

A January 2018 VA audiology evaluation resulted in a medical opinion that the Veteran's claimed tinnitus was at least as likely as not a result of military noise exposure. 

The Veteran was afforded a VA neurology examination on January 10, 2018 as to both upper and both lower extremities. It was reported that electromyographic findings in June 2004 revealed peripheral neuropathy and mild left median nerve compression neuropathy, consistent with carpal tunnel syndrome (CTS), which was a recognized complication of diabetes. He had mild left CTS, and mild diabetic peripheral neuropathy of the lower extremities. He had taken Gabapentin since 2001. He reported having moderate constant pain, paresthesias, and numbness of the extremities on the right side, and severe in the extremities on the left side. However, on examination, strength, reflexes, and all sensations were normal in all extremities. There was no muscle atrophy or trophic changes. He had mild left median and mild bilateral ulnar neuropathy, but the median nerve in the right upper extremity was normal. He had mild femoral neuropathy in the right lower extremity and moderate femoral neuropathy in the left lower extremity. The examiner reported that the Veteran's diabetic peripheral neuropathy did not impact his ability to work. 

Analysis

The Veteran is service-connected for an anxiety disorder, rated 30 percent from December 14, 2007 and 50 percent from January 28, 2015; diabetes mellitus, type II, with erectile dysfunction, rated 20 percent from July 9, 2001; peripheral neuropathy of the left upper extremity, rated noncompensably disabling from August 23, 2004, and 20 percent disabling from December 8, 2017; peripheral neuropathy of the right lower extremity, rated 10 percent disabling from August 23, 2004; peripheral neuropathy of the left lower extremity, rated 10 percent disabling from August 23, 2004; peripheral neuropathy of the right upper extremity, rated 10 percent disabling from December 8, 2017; and tinnitus, rated 10 percent disabling from December 8, 2017. He is in receipt of special monthly compensation (SMC) under 38 U.S.C. § 1114(k) and 38 C.F.R. § 3.350(a) on account of loss of use of a creative organ from August 23, 2004. He has been in receipt of a combined disability rating of 20 percent from July 9, 2001; 40 percent from August 23, 2004; 60 percent from December 14, 2007; 70 percent from January 28, 2015; and 80 percent from December 8, 2017. 

Here, the Veteran meets the schedular criteria for a TDIU rating and, so, extraschedular consideration under 38 C.F.R. § 4.16(b) is not required. 

The Veteran's service-connected diabetes, rated 20 percent, encompasses a restricted diet and the use of either insulin or an oral hypoglycemic agent. He has only the early stages of diabetic peripheral neuropathy of his upper and lower extremities. Significantly, the recent VA neurology examination in January 2018 yielded an opinion that his diabetic peripheral neuropathy did not impact his ability to work. Even when considering all this together with his service-connected tinnitus, the only occupational or work opportunities which might be restricted are those requiring heavy manual labor. However, the Veteran has three years of college education and even experience teaching and, as a result, he is not precluded from performing more sedentary work, such as office work due these disabilities. 

Implicitly, it is contended that his service-connected psychiatric disorder causes the Veteran to have such problems with interpersonal relationships that even office work would be precluded. In this regard, the Board must again observe that it appears that the Veteran has not sought employment in the years since his release from incarceration in August 2007, and this was after his retirement following more than 20 years of military service. Additionally, there is little probative value which can attach to the Veteran's reports as to the severity of his service-connected psychiatric disorder in light of the conflicting information he has reported as to being socially isolated and staying at home, when there is clear evidence that he travels extensively. Also, diminishing his credibility is his recently well-documented exaggeration of the symptoms and level of impairment caused by his service-connected psychiatric disorder. 

Furthermore, the extent to which the Veteran himself actually believes that he stopped working due to his service-connected disabilities is questionable given his own multiple statements regarding repairing his house and indications that he may assist his wife in continuing to raise and breed German Shepherds. 

The Board finds that although the evidence clearly demonstrates that the appellant's disabilities limit his ability to work, it does not demonstrate that his service-connected disabilities alone are of sufficient severity to produce the veteran from engaging in a substantially gainful occupation. The Board finds that the evidence demonstrates that despite functional impairment due solely to the service-connected disorders, the appellant is physically able to perform sedentary work. 

Although the appellant disputes whether his employment and educational background allow him to qualify for sedentary work, the appellant does not contend that he is psychiatrically unable to perform sedentary work. 

With respect to any arguments to the effect that the Veteran is precluded from obtaining sedentary work by reason of not having completed college and history of labor-intensive jobs, the Board finds that while the Veteran's education and work experience may limit his employment opportunities, there is no evidence demonstrating that a lack of college degree would preclude the Veteran from all forms of gainful sedentary employment. 

The Veteran has not submitted any evidence demonstrating that his level of education and his past employment experience categorically preclude him from sedentary employment that would provide more than marginal income. See Pederson v. McDonald, 27 Vet. App. 276 (2015) (citing 8 U.S.C. § 5107(a) ("[A] claimant has the responsibility to present and support a claim for benefits. . . ."); Fagen v. Shinseki, 573 F.3d 1282, 1286 (Fed. Cir. 2009) (stating that the claimant has the burden to "present and support a claim for benefits" and noting that the benefit of the doubt standard in section 5107(b) is not applicable based on pure speculation or remote possibility); Skoczen v. Shinseki, 564 F.3d 1319, 1323-29 (Fed. Cir. 2009) (interpreting section 5107(a) to obligate a claimant to provide an evidentiary basis for his or her benefits claim, consistent with VA's duty to assist, and recognizing that "[w]hether submitted by the claimant or VA . . . the evidence must rise to the requisite level set forth in section 5107(b)," requiring an approximate balance of positive and negative evidence regarding any issue material to the determination)). 

Moreover, the record does not demonstrate, nor does the Veteran argue, that there is anything unique about his educational background or abilities that would preclude him from obtaining sedentary employment. 

In this connection, there is no legal requirement that the Board make specific findings as to which particular types of sedentary employment the Veteran is capable of performing. Moreover, "a TDIU determination does not require any analysis of the actual opportunities available in the job market." See Pederson v. McDonald, 27 Vet. App. 276 (2015) (en banc) (quoting Smith v. Shinseki, 647 F.3d 1380, 1385 (Fed. Cir. 2011)).

In rendering the decision herein, the Board has not impermissibly considered his non-service-connected disabilities or his age. Rather, the Board has considered, as it is required to do, all the relevant medical evidence regarding the Veteran's employability. 

The Board specifically finds that even after consideration of the doctrine of reasonable doubt the Veteran's service-connected disabilities impair the ability to work, but that the level of impairment does not cause unemployability. Again, as noted above, there is no dispute that the Veteran's disabilities, service connected or not, impair his ability to work. The Board, however, ultimately concludes that his 

service-connected disabilities do not preclude him from securing or following a substantially gainful occupation.


ORDER

The claim for an initial evaluation in excess of 30 percent for an anxiety disorder from December 14, 2007 through January 27, 2015, and in excess of 50 percent thereafter, is denied. 

Entitlement to a TDIU is denied.



______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs